# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| Anthony Bridgeforth, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2128 (RCL) |
| ) | |
| Khadijah Bronson, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS JOSEPH A. POWELL, JAMES L. CARTER, JOSE ACOSTA, DARRELL D. JOHNSON, DAVID SMITH, RALPH W. MCLEAN AND THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Anthony Bridgeforth respectfully submits this memorandum in opposition to the motion for summary judgment filed by defendants Jose Acosta, James Carter, Darrell Johnson, Ralph McLean, Joseph Powell, David Smith and the District of Columbia (collectively, the "District Defendants").

## INTRODUCTION

This case involves the eviction of Mr. Bridgeforth at the hands of a landlord and active police officers without legal process. Finding themselves faced with well-settled law and policy prohibiting their conduct, undisputed factual admissions of their wrongdoing, and an affirmative motion for summary judgment, the District Defendants foist seven points in an effort to avoid liability. Five points are substantive in nature, and two points are procedural in nature. But not one has merit. As discussed below, the substantive arguments fail because: (1) the District Defendants fire blanks at Section 1983 concepts without any bearing on this case

(*respondeat superior* and demonstration of policy and practice) but fail to mount any legitimate attack on the real bases for municipal liability (failure to train, failure to supervise, and the policy-setting actions of Captain McLean); (2) qualified immunity does not cloak the individual officer defendants because, once the appropriate test is applied, material facts adduced in discovery actually support Mr. Bridgeforth's claims or are, at the least, disputed; (3) the District Defendants' qualified immunity argument and wrongful eviction argument are further undermined by repeated assertions that a signed lease is required for person to hold legal right to reside on property, which is contrary to law; (4) the District Defendants' attempt to shrug off Mr. Bridgeforth's unconstitutional seizure claim by belittling it to "changing the locks" fails as a matter of pleading and fact; and (5) genuine disputes of material fact prevent dismissal of Mr. Bridgeforth's intentional infliction of emotional distress claim. The District Defendants' procedural arguments also fail because (6) punitive damages are to be determined by a jury, not a Court based on what is at best a disputed factual record, and (7) a determination that the Court now lacks supplemental jurisdiction over the very claims that <u>the District Defendants'</u> removed in the first place would promote gamesmanship and would be patently unfair to Mr. Bridgeforth.

Even more remarkable than the errant points the District Defendants make in their motion are the points they fail to make. For example, the District Defendants' motion for summary judgment utterly fails to:

- Mention the express Metropolitan Police Department policy that forbids officers from "becom[ing] involved in apparent landlord-tenant disputes;"

- Join issue with, much less support the summary dismissal of, Mr. Bridgeforth's failure to train and failure to supervise claims against the District; or

- Properly characterize the deposition testimony of Mr. Bridgeforth's police practices expert in an effort to attribute opinions to him he does not have.

The last of these omissions is telling.  Dr. R. Paul McCauley <u>actually</u> opined that MPD eviction practice did not comply with MPD eviction policy, <u>1</u>/ that any argument that MPD's obligation to comply with settled eviction law somehow disappeared when the <u>McMillian</u> settlement agreement sunsetted raises "a very sad and red flag," <u>2</u>/ and that the District is not meeting the standard of care when it comes to training its police officers on undisputed self-help eviction policy, namely, whether the officers demonstrate the proper skills when they are out on the streets. <u>3</u>/  These opinions are unrebutted; there is no defense expert.  Yet the District Defendants use half-answers at Dr. McCauley's deposition in their motion to lead the Court to a different conclusion with respect to municipal liability for the District.  When litigants must resort to such conduct it is usually because, as here, more legitimate arguments are doomed.  Accordingly, the District Defendants' motion should be denied.

Indeed, as set forth in more detail in Mr. Bridgeforth's own motion for summary judgment, the exact opposite result is warranted here.  This case presents the rare opportunity to find in favor of the plaintiff at the summary judgment stage based on well-settled law and undisputed facts that the District Defendants and defendant Khadijah Bronson acted in breach of District of Columbia law and in violation of the Fourth and Fifth Amendments to the U.S. Constitution as remedied by 42 U.S.C. § 1983.

---

<u>1</u>/     <u>See</u>, <u>e.g.</u>, Depo. of R. Paul McCauley, taken Feb. 15, 2008, excerpts of which are attached hereto as Exhibit 2 ("McCauley Dep."), at 133:20 – 134:1 ("The question is did [the MPD conduct specified training].  . . .  And the answer is no, they did not do what they said they were supposed to do.").

<u>2</u>/     <u>Id.</u> at 147:7–18.

<u>3</u>/     <u>See</u>, <u>e.g.</u>, <u>id.</u> at 167:2 – 168:10.

## STATEMENT OF FACTS

Mr. Bridgeforth adopts and incorporates by reference the "Undisputed Facts" set forth in his April 7, 2008 summary judgment memorandum for the Court's convenience. Nonetheless, three of the factual contentions in District Defendants' "preliminary statement" deserve special note.

First, several of the facts set forth by the District Defendants plainly support Mr. Bridgeforth's tenancy claim and, by extension, his competing motion for summary judgment. For example, according to the District Defendants, Ms. Bronson "gave [Mr. Bridgeforth] what she thought was the key to his unit." Memo. of Points and Authorities in Support of Def.s' Mot. for Summary Judgment, filed Apr. 7, 2008 [D.E. 23] ("DC Motion"), at 2. As a result, Ms. Bronson "told [Mr. Bridgeforth] that the unit to the right was his unit and he took it." Id. at 3. And the District Defendants explained that Ms. Bronson was the reason Mr. Bridgeforth did not have an executed lease as of January 20, 2006. See id. at 2 (Ms. Bronson "was out of town because of an emergency"). The fact most relevant to—and damaging for—the District Defendants' motion, though, is that Mr. Bridgeforth "told the defendant officers that he had a legal right to be [in the apartment]" during the eviction proceedings at issue in this case. Id. at 4.

Second, the District Defendants wrongly suggest that Mr. Bridgeforth "agreed to rent" an apartment other than Ms. Bronson's unit at 210 20th Street, N.E. at any time relevant to the claims asserted here. As Mr. Bridgeforth clarified at his deposition, he never even visited an apartment on E Street, N.E., much less rented and resided in one. See Deposition of Anthony Bridgeforth, taken Dec. 6, 2007, excerpts of which are attached hereto as Exhibit 1 ("Bridgeforth Dep."), at 98:22. The only address relevant to this case is 210 20th Street, N.E.

Third, the District Defendants' account of the procedural history of this case neglects to mention that "this case was removed to this Honorable Court" as a result of the efforts of <u>the District Defendants</u>. <u>See</u> Notice of Removal, filed Dec. 14, 2006 [D.E. 1].  As discussed below, this fact alone exposes the flaws in the District Defendants' procedural argument that certain claims asserted by Mr. Bridgeforth are subject to dismissal for lack of federal jurisdiction. <u>See</u> DC Motion at 21–22.

## ARGUMENT

As a preliminary matter, the District Defendants have misstated the applicable burden they must meet to succeed in their motion for summary judgment.  Point I of the District Defendants' motion relies almost entirely on local District of Columbia law to argue, in part, that the moving party "is not obligated to present supporting evidence."  DC Motion at 5.  But the federal rules of civil procedure, which apply to this case under the doctrine of <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938) and <u>Anchorage-Hynning & Co. v. Moringiello</u>, 697 F.2d 356, 360–61 (D.C.Cir.1983), place a different burden on a party seeking summary judgment.  As demonstrated by the fully-supported motion filed by Mr. Bridgeforth, a party seeking summary judgment pursuant to Fed. R. Civ. P. 56(c) must provide the district court with a factual record sufficient to demonstrate the absence of a genuine issue of material fact.  <u>See</u> <u>Initiative and Referendum Institute v. U.S. Postal Service</u>, 116 F. Supp.2d 65, 68–69 (D.D.C. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986)).  This is especially true where, as here, the case involves cross-motions for summary judgment, because the Court essentially is being asked to "determine whether either party, as a movant, has supported its motion with sufficient evidence that no dispute exists concerning the facts that must be assessed . . . ." <u>Id.</u> at 69.

This misstatement is important because the District Defendants have not provided any evidence to support a number of their putative grounds for summary judgment. Accordingly, and for other reasons discussed below, the District Defendants have failed to meet their burden to sustain a motion for summary judgment on each and every one of their seven points.

## I.      THE DISTRICT OF COLUMBIA CANNOT AVOID MUNICIPAL LIABILITY FOR THE WRONGFUL ACTIONS OF ITS POLICE OFFICERS HERE.

The lengths the District Defendants are willing to go trying to mislead the Court into thinking that their positions are not only meritorious, but summarily so, are in full display when it comes to Mr. Bridgeforth's claim of municipal liability against the District. Mr. Bridgeforth claims that the District is municipally liable in this case for three reasons: (a) deliberately indifferent training, (b) deliberately indifferent supervision, and (c) a final decision by the pertinent final decision maker.  See Memo. of Law in Support of Pl.'s Mot. for Summary Judgment, filed Apr. 7, 2008 [D.E. 25] ("Bridgeforth Motion"), at 24–32.  The District Defendants' attempt to defeat these claims "as a matter of law," see DC Motion at 6, fails in at least four respects.

First, the legal premise of the District Defendants' arguments on municipal liability is off target.  The District Defendants argue that (a) "there is no *respondeat superior* liability on the part of a municipality for the alleged constitutional misconduct of its employees," id., and (b) that Mr. Bridgeforth has not demonstrated that "pervasive unconstitutional policy" or a "custom or practice" of police department residential evictions in the District of Columbia.  Id.

at 7. 4/  Even if these arguments were correct, summary judgment is not warranted here because those theories of municipal liability are not at issue in this case.  Mr. Bridgeforth instead alleges that, even if District policy itself is not unconstitutional, the District still should be held liable for failing to properly train its employees and officers on that policy, see City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000); failing to adequately supervise or discipline those employees, see Parker v. District of Columbia, 850 F.2d 708, 712 (D.C. Cir. 1988); and for executing a single unconstitutional policy decision at the highest relevant level.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).  As a result, much of the District Defendants' first substantive point is not relevant.

        Second, when the District Defendants do attempt to address at least part of Mr. Bridgeforth's actual theory of municipal liability—failure to train—they set forth a legal standard that Mr. Bridgeforth readily meets.  The District Defendants specifically argue that, in order to prevail on its failure to train theory, "Plaintiff must prove facts that the District knew its officers were unlawfully evicting citizens, and chose not to provide them with the necessary training to prevent future misconduct by its officers."  DC Motion at 11.  Done.  The undisputed facts demonstrate:

- The District "knew" that MPD officers had engaged in unlawful evictions no later than 2000, when it entered into a settlement agreement to resolve a self-help eviction lawsuit entitled McMillian v. Davis, Civil Action No. 98-7746 (D.C. Super.);

- The District established "the necessary training" to remedy the practices identified in McMillian no later than February 23, 2001, when it purported to

---

4/        Although the point headings used by the District Defendants suggests that their "custom, policy [and] practice" arguments are distinct from their "failure to train and supervise" arguments, the District Defendants base the latter argument on the assumption that a plaintiff must "prove that the misconduct was caused by municipal policy" as well.  See DC Motion at 8–9 (citing Oklahoma City v. Tuttle，471 U.S. 808, 823–24 (1985).

implement a six-point training program in express response to McMillian and purported to establish new tracking mechanisms for citizen complaints relating to police involvement in unlawful evictions.  See Ex. 16 to Bridgeforth Motion; and

- As of January 2006, the MPD "chose not to provide" critical aspects of the very training program set forth in 2001.  See Deposition of Kimberly Butler, taken on Feb. 5, 2008, excerpts of which are attached as Ex. 11 to the Bridgeforth Motion ("Butler Dep."), at 43:7–11, 50:7–10, 58:1–15 & 60:4–7.

Not only do these facts belie the District Defendants' unsupported assertion that "Plaintiff has not shown evidence" in this regard, see DC Motion at 11, but they and the District Defendants' own stated test demonstrate why it is Mr. Bridgeforth who should prevail at summary judgment rather than the District Defendants.

Third, the District Defendants' primary argument on Mr. Bridgeforth's failure to train claim—that Mr. Bridgeforth lacks supporting expert testimony—is incorrect at best. 5/ Mr. Bridgeforth did offer an expert to address the District's failure to train and other issues. Apparently inconvenienced by the existence of Dr. McCauley, the District Defendants therefore engage in sleight of hand to make it look like "Dr. McCauley opined that the District's training practices are within the national standard of care."  DC Motion at 10.  The District Defendants specifically quote four passages from Dr. McCauley's deposition, but each one was taken out of context or creatively edited to hide the fact that Dr. McCauley's actual opinions are exactly the opposite.

---

5/      Mr. Bridgeforth does not concede that expert testimony is required in this case to support his failure to train and failure to supervise claims.  The District Defendants do not cite a single federal case supporting such an evidentiary requirement, see DC Motion at 8 (citing all local District of Columbia cases), perhaps because federal cases have held that no expert is required to prove that a municipality failed to train or supervise its employees in connection with a "persistent, open and notorious" problem.  See Daskalea, 227 F.3d at 445.  Mr. Bridgeforth believes it is well "within the realm of common knowledge and everyday experience" of a jury to find that failing to keep training promises made in an express settlement agreement constitutes such a problem.  See District of Columbia v. White, 442 A.2d 159, 162 (D.C. 1982).

For example, the District Defendants devote most of page 9 in their motion to an excerpt from Dr. McCauley's deposition regarding the policies issued by the MPD "on paper." See DC Motion at 9.  Dr. McCauley's answers, however, continue on to the next page, which is omitted from the District Defendants' motion and exhibits.  The quoted passage continues:

> Q:     Okay.
>
> A:     So that's what they said they have available.
>
> Q:     Okay.
>
> A:     The question is did they do it.
>
> Q:     Okay.
>
> A:     And the answer is no, they did not do what they said they were supposed to do . . . .

McCauley Dep. at 133:16 – 134:1 (emphasis added).  Likewise, the District Defendants put the following question and answer in boldface type in their motion:  "Q:  Did the District of Columbia violate a national standard of care when it comes to training police officers?  A: As a general statement, probably not."  DC Motion at 10 (quoting McCauley Dep. at 143:19 – 144:1. But the very next question and answer, conveniently omitted from the District Defendants' account of the record, is far more important:

> Q:     What do you mean by "as a general statement"?
>
> A:     You have a court order about evictions here, that they had to have some kind of training, they had to have a policy, they had to do these kinds of things. The integrity of the Metropolitan Police is at stake. Are we going to have a policy?  Yes.  They wrote one.  Are we going to train people in it?  They said they were.  The question is how you do it.  And they haven't done it.

McCauley Dep. at 144:16 – 145:2 (emphasis added).  Therefore, the District Defendants' request for judgment as a matter of law based on an incomplete view of the record is not credible.

<u>Fourth</u>, Mr. Bridgeforth has forcefully argued in favor of municipal liability on two grounds—failure to supervise and Captain McLean's unconstitutional policymaking—that are not addressed by the District Defendants.  <u>See</u> Bridgeforth Motion at 28–32.  There are ample facts in the record material to both of these issues to defeat summary judgment.  <u>See, e.g.</u>, Deposition of John Michael Hedgecock, taken Feb. 5, 2008, excerpts of which are attached as Ex. 12 to Bridgeforth Motion ("Hedgecock Dep."), at 121:4–17 (the District conducted no investigation, took no disciplinary action, and took no remedial action taken here); Deposition of Ralph W. McLean, taken Nov. 27, 2007, excerpts of which are as Ex. 6 to Bridgeforth Motion ("McLean Dep."), at 9:10–14 (same); Butler Dep. at 64:4–11 (the District does not carefully track citizen complaints regarding MPD involvement in landlord-tenant disputes); Hedgecock Dep. at 44:6–16 (same); McLean Dep. at 34:13–21 (McLean made the call to evict Mr. Bridgeforth).  Accordingly, even if the District Defendants could avoid municipal liability for the reasons set forth in the motion—which they assuredly cannot for the reasons set forth above, they still are not entitled to summary judgment.

## II.    THE INDIVIDUAL OFFICER DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

The District Defendants' main substantive argument with respect to individual defendants Acosta, Carter, Johnson, McLean, Powell, and Smith is that those individuals "enjoy a privilege and/or are entitled to qualified immunity . . . ."  <u>See</u> DC Motion at 11–16.  This argument fails here for three reasons: (a) the facts adduced in discovery show that the officers did, in fact, "knowingly violate the law;" (b) once the appropriate legal test is applied, material facts adduced in discovery actually support Mr. Bridgeforth's claims or, at the least, are in dispute; and (c) the post-hoc rationalizations for the officers' conduct offered by the District Defendants are hurt Defendants' case more than help it.

<u>First</u>, the District Defendants admit, as they must, that the doctrine of qualified immunity does not protect "those who knowingly violate the law." DC Motion at 13; <u>see also</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). The focus of this rule is "whether the officer had fair notice that her conduct was unlawful . . . at the time of the conduct." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 197–198 (2004). When the facts adduced in discovery are "[t]aken in the light most favorable to" Mr. Bridgeforth as "the party asserting the injury," <u>see</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), the record plainly supports such a finding here. For example, Officer Carter, the officer in charge of the scene, testified that he was fully aware that the dispute in question was "a landlord/tenant dispute" at the time <u>6</u>/ and that District and MPD policy prohibit officers from assisting in such evictions. <u>7</u>/ Officer Carter went on to testify as follows:

> Q.    Do you understand that would have been against police policy, in fact, to ask [Mr. Bridgeforth] to leave the scene?
>         ***
> A.    Yes.
>
> Q.    So that would have been against policy to have done so?
>         ***
> A.    Yes.

Carter Dep. at 41:5–15. Qualified immunity does not attach to such deliberate police actions.

---

<u>6</u>/    Depo. of James Carter, taken Nov. 29, 2007, excerpts of which are attached as Ex. 4 to Bridgeforth Motion ("Carter Dep."), at 18:13–14, 17.

<u>7</u>/    <u>See id.</u> at 40:3–5. Nearly every one of the other individual officer defendants had the same knowledge at the time. <u>See, e.g.</u>, McLean Dep. at 61:13–16; Depo. of Jose Acosta, taken Nov. 28, 2007, excerpts of which are attached as Ex. 3 to Bridgeforth Motion, at 45:10–16; Depo. of Darrelle Johnson, taken Nov. 28, 2007, excerpts of which are attached as Ex. 5 to Bridgeforth Motion ("Johnson Dep."), at 42:9–19; Depo. of David Smith, taken Nov. 29, 2007, excerpts of which are attached as Ex. 8 to Bridgeforth Motion ("Smith Dep."), at 82:20 – 83:1.

Second, again taking the facts in the light most favorable to Mr. Bridgeforth, the actions of the individual officer defendants were not objectively reasonable in this situation. 8/ As discussed in more detail in Mr. Bridgeforth's own motion for summary judgment, see Bridgeforth Motion at 22–23, the bare fact that the defendant officers did not act pursuant to a court order permitting them to evict Mr. Bridgeforth suggests that the eviction was unreasonable. See Soldal v. Cook County, 506 U.S. 56, 71 (1992) (recognizing this factor as part of the "reasonableness" analysis in a constitutional eviction claim). This is because it is not objectively reasonable to act in way that is "contrary to the law." See id. at 72.

The District Defendants, however, would have the Court assess reasonableness by considering whether "the defendant officers [had] reason to believe that plaintiff was unlawfully on defendant Bronson's property." DC Motion at 15. This is the wrong question. The right question, given the unmistakable MPD policy advising its officers that "they are not to become involved in apparent landlord-tenant disputes," 9/ is whether the defendant officers had reason to believe that this was a landlord/tenant dispute. The undisputed facts adduced in discovery leave no answer but "yes." The most influential officer on the scene, Officer Carter, testified that he understood the dispute to "be a landlord/tenant dispute" from the very beginning because "it was dispatched as so." Carter Dep. at 18:13–14, 17. Officer Carter accordingly explained to other officers on the scene that "Ms. Bronson is the landlord of the building . . . and she wanted to try

---

8/      The District Defendants use the wrong test to determine whether an official is entitled to qualified immunity. See DC Motion at 12. Courts do not judge the officer's alleged conduct using a subjective standard of reasonableness, i.e., using "the officer's perspective on the scene of the incident," as the District Defendants' suggest. Crawford-El v. Britton, 523 U.S. 574, 588 (1998) ("Evidence concerning the defendant's subjective intent is simply irrelevant."); Pitt v. District of Columbia, 491 F.3d 494, 508–09 (D.C. Cir. 2007).

9/      MPD Circular CIR-01-03, effective Feb. 28, 2001, attached as Ex. 15 to Bridgeforth Motion.

to get [Mr. Bridgeforth] out."  Deposition of Joseph Powell, taken Nov. 28, 2007, excerpts of which are attached as Ex. 7 to Bridgeforth Motion ("Powell Dep."), at 16:15–19.  And even the District Defendants state in their motion that the officers were presented with "paperwork" offering differing accounts of the landlord/tenant relationship between Mr. Bridgeforth and Ms. Bronson.  See DC Motion at 14.  Accordingly, the individual District Defendants cannot avail themselves of qualified immunity.

Third, the District Defendants attempt to cloud the immunity question by raising factual questions that actually hinder their ability to obtain summary judgment here.  The District Defendants' discussion of "unlawful entry" criminalized in D.C. Code § 22-3302, see DC Motion at 14–15, provides an example.  As an initial matter, the discussion is a red herring because there are no facts, much less undisputed facts, suggesting that Mr. Bridgeforth met the four elements set forth for unlawful entry in the District Defendants' motion. 10/  Indeed, Mr. Bridgeforth was never charged with such an offense.  But every time the District Defendants emphasize the need for officer discretion to determine whether this incident was either a landlord/tenant dispute or a case of unlawful entry they actually strengthen Mr. Bridgeforth's case against the District for failing to train officers on how to make such a judgment call.  See Deposition of Kimberly Butler, taken on Feb. 5, 2008, excerpts of which are attached as Ex. 11 to Bridgeforth Motion, at 17:11–12 ("[T]here has never been offered any training as to whether a tenant is legal or not.").  Indeed, the officers on the scene confirmed that they have never been

---

10/      For example, no one has claimed that Mr. Bridgeforth "refused to leave" after the police officers unlawfully directed him to leave the property as required in the fourth "essential element" of unlawful entry as alleged by the District Defendants.  Cf. DC Motion at 15.  Indeed, the individual officer defendants testified that he left the scene peaceably.  Mr. Bridgeforth therefore expressly denies the conclusory statement by the District Defendants that he "was in violation of the unlawful entry statute."  Id. at 18.

trained to make such a distinction.  See, e.g., Smith Dep. at 16:14–20 ("There's no written

general order or direct or special order.").  Accordingly, the District Defendants' far-fetched

efforts to apply the doctrine of qualified immunity here actually hurts their chances of obtaining

summary judgment more than it helps.

III.        **THE DISTRICT DEFENDANTS' REPEATED ASSERTION THAT
            MR. BRIDGEFORTH WAS SUBJECT TO UNLAWFUL EVICTION
            BECAUSE HE DID NOT HAVE A FULLY-EXECUTED LEASE IS
            WRONG.**

        Another example of counter-productive argumentation is the District Defendants'

repeated insistence that the conduct of the individual officers was reasonable "[b]ecause plaintiff

did not have a lease for the property."  DC Motion at 15; see also id. at 4, 14, 17, 18.  Aside from

the undisputed fact that a lease document had been created and that Ms. Bronson had signed it—

facts far more instructive as to whether Mr. Bridgeforth had a right to reside at 210 20th Street,

S.E. than his own signature—the District Defendants are wrong to suggest that a signed lease is

required for person to hold legal right to reside on property in two respects.

        First, the District Defendants' position that Mr. Bridgeforth "was without lawful

authority to remain [in his apartment unit] . . . [b]ecause [he] did not have a lease for the

property" is contrary to law.  DC Motion at 15.  District of Columbia statute and case law have

long recognized that tenancies may arise by oral agreement alone.  See D.C. Code § 45-220;

Cavalier Apartments Corp. v. McMullen, 153 A.2d 642 (D.C. 1959); Miller v. Plumley, 77 A.2d

173 (D.C.1950).  Whether a landlord-tenant relationship exists depends upon the circumstances

surrounding the use and occupancy of the property.  See Anderson v. William J. Davis, Inc., 553

A.2d 648, 649 (D.C.1989).  One of the most important factors in such a determination is whether

rent has been paid.  See id.; see also Smith v. Town Ctr. Management Corp., 329 A.2d 779, 780

(D.C.1974) (establishing an "estate at sufferance" when rent has been paid on a rate per month

basis) (citing D.C. Code § 45-820 (1973)).  Indeed, one of the District Defendants' own cases

explains that a tenancy would arise if the alleged tenant "had an oral agreement to occupy the

apartment in exchange for regular monthly rental payments," and that such a tenancy would

"requir[e] court process for termination."  Young v. District of Columbia, 752 A.2d 138, 143

(D.C. 2000) (citing D.C. Code §§ 45-1404, -16-1501, and Mendes v. Johnson, 389 A.2d 781,

787 (D.C.1978)).

There is no dispute that Ms. Bronson was paid over $1,000 in rent in January

2006 for Mr. Bridgeforth to live at 210 20th Street, N.E.  See Ex. 31 to Bridgeforth Motion.  And

at least one of the individual officers admitted that the MPD "should not have gotten involved"

once it was known that "rent had been paid up for that month."  Johnson Dep. at 53:3–19.

Officer Johnson was right, of course, even though the District Defendants' motion suggests

otherwise.

Second, the fact that the officers spent so much time combing through the

"paperwork" provided by both Mr. Bridgeforth and Ms. Bronson and conducting a mini-trial on

the scene to reach the conclusion that he "had not signed a lease," see DC Motion at 18, actually

establishes that the District Defendants were "involved in apparent landlord-tenant disputes"

contrary to MPD policy.  In fact, the District Defendants go farther in the motion by citing

evidence that directly and exclusively links the absence of a signed lease to the officers' eviction

order.  See id. ("[T]hese defendants asked whether he had a lease, and when he told them no,

they said if he did not leave in five (5) minutes, he would be arrested . . . .").  This evidence

supports Mr. Bridgeforth's motion for summary judgment, not the District Defendants' motion.

At the very least, the District Defendants' misstatement of the law resoundingly defeats the sixth

argument in their motion that a common law wrongful eviction claim is "unsupported by law." Motion at 17–18.

**IV.        DEFENDANT OFFICERS CARTER AND SMITH MISCONSTRUE, AND FAIL TO SUCCEED IN DISMISSING, MR. BRIDGEFORTH'S UNLAWFUL SEIZURE CLAIM.**

The District Defendants' half-page argument that Count VI of Mr. Bridgeforth's Amended Complaint should be dismissed because those officers did not physically change the locks to his apartment also fails for two reasons.

First, the characterization of Count VI as a constitutional claim arising solely out of a particular officers' "changing the locks" is too narrow.  Count VI alleges that Officer Carter and Officer Smith were "participating" in changing the locks during the incident in question, that they unlawfully seized Mr. Bridgeforth's possessions, and that they otherwise effected an "unreasonable seizure" in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.  As discussed more fully in Mr. Bridgeforth's motion for summary judgment, see Bridgeforth Motion at 19–22, law enforcement defendants can be found to have "seized" property even if the evidence shows that they were merely passive observers while others changed the locks.  See Soldal, 506 U.S. at 59.

Second, the facts adduced in discovery clearly support Mr. Bridgeforth's unlawful seizure claim as properly construed.  The officers specifically testified that the locks to Mr. Bridgeforth's apartment were changed in the officers' presence.  See Powell Dep. at 35:14 – 36:1 ("I saw them being changed"); Carter Dep. at 36:8 (locks were changed while "we were still there").  Viewed in the light most favorable to the non-moving party, such testimony precludes summary judgment on this Count.

## V. COUNT VII FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD PROCEED TO A JURY.

The District Defendants also argue that Mr. Bridgeforth's claim for intentional infliction of emotional distress against the District, Ms. Bronson, Captain McLean, and Officers Carter and Smith should be dismissed. See DC Motion at 17. The District Defendants do not support this argument with a single cite to record evidence. Instead, they conclusorily assert that they should be absolved of liability because they (a) owed no duty to Mr. Bridgeforth and (c) did not engage in "severe or outrageous" behavior. Id. Both of these points is wrong.

The District Defendants owed a very important duty to Mr. Bridgeforth—to uphold the law and protect law-abiding citizens. See Parrott v. District of Columbia, Case No. 91-0049, 1991 WL 126020, at *3 (D.D.C. June 25, 1991). As this Court held in Parrot, "It is a police officer's duty to uphold the law which has been passed by the people in order to protect society." Id. Moreover, if police officers suggest otherwise, as the District Defendants do here, "[t]he dependability of the police force would be destroyed." Id. And there is no shortage of facts adduced in discovery to support a jury finding that the District Defendants breached that duty in this case. See, e.g., Deposition of Jeffrey McGunigal, taken Nov. 27, 2007, excerpts of which are attached as Ex. 9 to Bridgeforth Motion, at 53:4–6 ("[W]e're here because Mr. Bridgeforth was asked [by the MPD] to leave his apartment, and it was not the proper thing to do . . . .").

Moreover, District of Columbia courts have held that "[i]t is for the trier of fact to determine . . . whether . . . particular conduct was sufficient to constitute extreme outrage." E.g., King v. Kidd, 640 A.2d 656, 668 (D.C. 1993) (internal quotation and citation omitted). The issue is properly submitted to the jury "[i]f reasonable people could differ on whether the conduct [was] extreme and outrageous . . . ." Id. (citing Howard Univ. v. Best, 484 A.2d 958,

985 (D.C. 1984)).  Viewed in the light most favorable to Mr. Bridgeforth, the District

Defendants' conduct readily meets this standard, especially when the context and power

dynamics of this particular conduct—eviction after midnight under threat of arrest by no fewer

than five uniformed police officers—are taken into account as they must.  See id. (explaining

that a defendant's conduct "should not be considered in a sterile setting, detached from the

surroundings in which it occurred"); Waldon v. Covington, 415 A.2d 1070, 1076 n. 21 (D.C.

1980); Restatement (Second) of Torts § 46 cmt. e (explaining that courts should carefully

scrutinize a defendant's conduct where the defendant is in a position of "actual or apparent

authority over the other, or power to affect his [or her] interests").

## VI.       THE DISTRICT DEFENDANTS' PREEMPTIVE EFFORT TO DEPRIVE A JURY OF A PUNITIVE DAMAGES DETERMINATION FAILS.

Mr. Bridgeforth agrees that punitive damages are not available against the

District, but the District Defendants' argument that Mr. Bridgeforth should not be permitted to

seek punitive damages from the individual officer defendants is premature and wrong.  Without

the benefit of a single case or admissible piece of evidence, 11/ the District Defendants broadly

argue that Mr. Bridgeforth cannot show that the officers' actions meet the requirements to merit

punitive damages.  But District of Columbia courts have long "presume[d]" that "damages result

from an unlawful eviction" and that "a tenant who has been unlawfully evicted may recover for

mental suffering, inconvenience and discomfort."  Robinson v. Sarisky, 535 A.2d 901, 905 (D.C.

1988) (quoting Higgins v. Dail, 61 A.2d 38, 40 n. 2 (D.C.1948)).  As a result, "[p]unitive

---

11/      The District Defendants' use of testimony from someone who has never met Mr.
Bridgeforth, has no other personal knowledge regarding Mr. Bridgeforth, and was not at the
scene of the incident that that Mr. Bridgeforth was "known to be a PCP user" is inadmissible as
hearsay, character evidence, and prejudicial statement afoul of Fed. R. Evid. 403, and Mr.
Bridgeforth would contest the potential use of such testimony in advance of trial.

damages <u>are available</u> in actions for intentional torts such as wrongful eviction." <u>Id.</u> at 906; <u>see also</u> <u>Mendes</u>, 389 A.2d at 792 (affirming punitive damage award).  As set forth more fully in Mr. Bridgeforth's motion for summary judgment, facts adduced in discovery demonstrate that the officers acted deliberately and with a willful disregard for his rights.  Mr. Bridgeforth should not be arbitrarily prevented from recovering an appropriate award once such facts are presented to a jury.

**VII.     THE DISTRICT DEFENDANTS' JURISDICTIONAL ARGUMENT IS UNFAIR AND UNPERSUASIVE.**

Finally, the District Defendants have the audacity to ask this Court to decline supplemental jurisdiction over Counts II and VII of Mr. Bridgeforth's Amended Complaint for common law wrongful eviction and intentional infliction of emotional distress in the unlikely event that the constitutional claims raised in Mr. Bridgeforth's other counts are dismissed.  <u>See</u> DC Motion at 21–22.  This request is jarring because the District Defendants are the ones who removed this case from the District of Columbia Superior Court in the first place.  <u>See</u> Notice of Removal, filed Dec. 14, 2006 [D.E. 1].  The District Defendants cite no cases to support their ironic jurisdictional request in this context other than hornbook Supreme Court cases defining "supplemental jurisdiction," nor can they.  Indeed, honoring the request would turn the values of "[c]omity and justice" the District Defendants invoke on their heads.  DC Motion at 22.  Not only would it be extremely unfair to permit a party to remove a case in its entirety, reach a decision on federal claims only, then dismiss the remaining claims to the benefit of the removing party, but such an outcome would encourage other litigants to engage in the same kind of gamesmanship and tactics in the future.  Courts rightly frown upon such a poor public policy result.  <u>See, e.g.</u>, <u>R.G. Barry Corp. v Mushroom Makers, Inc.</u>, 612 F.2d 651, 655–65 (2d Cir. 1979) (declining to remand for further proceedings in order to "put an end to what appears to

resemble jurisdictional gamesmanship" derived from the use of removal jurisdiction by the parties).

## <u>CONCLUSION</u>

For the foregoing reasons, the motion for summary judgment filed by defendants Jose Acosta, James Carter, Darrell Johnson, Ralph McLean, Joseph Powell, David Smith and the District of Columbia should be denied.

Respectfully submitted,

HOGAN & HARTSON LLP

By: /s/ Jeremy T. Monthy_____
  Adam K. Levin (#460362)
  Jeremy T. Monthy (#468903)
  555 Thirteenth Street, N.W.
  Washington, D.C.  20004
  (202) 637-5600
  (202) 637-5910 (fax)

Dated:  May 22, 2008     Counsel for Plaintiff Anthony Bridgeforth

# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

+ + + + +

þÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍ»
IN THE MATTER OF:                 º
                                  º
ANTHONY BRIDGEFORTH,              º
      Plaintiff,                  º  C.A. No.
                                  º  06-2128
                                  º
      v.                          º  (RCL)
                                  º
KHADIJAH BRONSON, ET AL,          º
      Defendants.                 º
þÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍÍ¼

                        Thursday,

                        December 6, 2007

                        Washington, D.C.

DEPOSITION OF:

            ANTHONY BRIDGEFORTH


called for examination by Counsel for the

Defendant, pursuant to Notice of Deposition,

in the Office of the Attorney General for the

District of Columbia, 441 4th Street, N.W., 6th

Floor South Conference Room, when were present

on behalf of the respective parties:

1    telephone.  She spoke to you about both

2    apartments.  When did you decide to visit 210

3    20th Street, N.E.?

4              A    I can't remember the exact date.

5              Q    Okay.

6              A    But I took Yolanda Geter and her

7    mother, that was the first time that I

8    actually went in and went to -- that was my

9    apartment.

10             Q    Okay.  Let me take you back again,

11   because I'm confused.  You are talking to Ms.

12   Geter -- Ms. Bronson on the telephone.

13             A    Yes.

14             Q    Okay.  She is telling you about

15   the two type of apartments that she has.

16   Okay.  Then you told me or you testified a

17   minute ago that she told you that the one at

18   1718 E Street was not ready yet, because it

19   was being remodeled.  Am I still correct?

20             A    No.

21             Q    Okay.  What did she say?

22             A    I never visited 1718 E Street.

# EXHIBIT 2

1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

\* \* \* \* \* \*

DEPOSITION

\* \* \* \* \* \*

In the Matter of:

ANTHONY BRIDGEFORTH,

      Plaintiff

v.

                                  Civil No.
                                  06-CA-002128
                                  (RCL)

KHADIJAH BRONSON, et al,

      Defendants

Friday,
February 15, 2008

Deposition of:

    R. PAUL McCAULEY, PhD

called for examination by Counsel for the
Defendants, pursuant to notice of deposition,
at 1:00 p.m., in the Office of the Attorney
General for the District of Columbia, Room
6N106, 441 4th Street, N.W., Washington, D.C.
20001, when were present on behalf of the
respective parties:

133

1          A      Well, they have a policy document,

2     and the policy document is supposed to serve

3     as the guiding document for training.

4          Q      Okay.

5          A      And they have, on paper, they have

6     roll call training.

7          Q      Okay.

8          A      They have academy training, level

9     7, for recruits, lateral officers.  They have

10    training  in  evictions  on  paper  for  field

11    training officers or master patrolmen, master

12    officers.  And they may include that for some

13    supervisors,  typically  the  sergeant  level,

14    depending I think on what the chief decides

15    that year is relevant or important.

16         Q      Okay.

17         A      So that's what they said they have

18    available.

19         Q      Okay.

20         A      The question is did they do it.

21         Q      Okay.

22         A      And the answer is no, they did not

134

1    do what they said they were supposed to do,

2    meaning --

3         Q     What testimony do you have --

4         A     I am looking at, I think Kimberly

5    Butler, Sgt. Butler.

6         Q     Okay.

7         A     Do you know if there was, has ever

8    -- I'm on page seventeen.  Do you know if

9    there's ever been any training -- do you know

10   if there's ever been any training offered at

11   the MPD Academy on determining whether an

12   individual is a lawful tenant or not?  No.

13            And then it says, no, I am saying

14   no, there has never been offered any training

15   as to whether a tenant is legal or not.

16        Q     Okay.  Now let me stop you for a

17   minute.

18        A     Okay.

19        Q     Let me stop you for a minute.

20   Okay.  You just testified that the District of

21   Columbia, that you saw documents regarding the

22   training that is provided to police officers

144

```
 1    not.

 2         Q    Okay.

 3         A    As a general statement.

 4         Q    Okay.    So   the   District   of

 5    Columbia, in its training of police officers,

 6    does pretty much what the national standard of

 7    care is.

 8              MR. MONTHY:  Objection to form.

 9              MS. VALDEZ:  Is that correct?

10              THE   WITNESS:    As   a   general

11    statement, in my opinion; yes.

12              MS. VALDEZ:  Okay.

13              BY MS. VALDEZ:

14         Q    What do you mean by "as a general

15    statement?"

16         A    You   have   a   court   order   about

17    evictions here, that they had to have some

18    kind of training, they had to have a policy,

19    they had to do these kinds of things.    The

20    integrity of the Metropolitan Police is at

21    stake.  Are we going to have a policy?  Yes.

22    They wrote one.  Are we going to train people
```

145

1    in it?  They said they were.  The question is

2    how do you do it.  And they haven't done it.

3        Q    Okay.  What court order are you

4    referring to?

5        A    Well, when I say a court order, as

6    a result of the McMillian matter, this -- the

7    document said in response to that, this is our

8    policy and --

9        Q    And  you're  referring  to  the

10   McMillian settlement agreement?

11       A    Yes, ma'am.

12       Q    Okay.  Are you aware the McMillian

13   settlement agreement sunsetted approximately

14   four years ago, meaning it's no longer in

15   effect?

16       A    The  integrity  of  a  police

17   department is always in effect.

18       Q    I understand.  That's not my

19   question.  My question to you is, you're

20   referring to this agreement in the McMillian

21   settlement; is that correct?

22       A    Yes.

1          THE WITNESS:  Okay.

2          BY MS. VALDEZ:

3          Q     So since the court order doesn't

4     exist and the McMillian settlement agreement

5     is no longer in effect, what are you referring

6     to?

7          A     You know, I think that what you

8     just said raises a very sad flag, which says -

9     - and a very sad and red flag, that says the

10    only reason that we are going to comply with

11    policies and the law with regard to eviction

12    is because we have to because of a settlement

13    agreement.  I think that's horrible.  The

14    integrity of the police department has to

15    exist forever.

16          So the policy, the training, all

17    of that stuff has to be done because of or in

18    spite of that document.

19          Q     Did you review Sgt. Butler's

20    deposition, when she testified that police

21    officers are trained that evictions are

22    illegal in the District of Columbia?  That

1      A     I don't think there is a standard

2   in   hours.    The   question   is   skill   for

3   performance .

4      Q     Okay.

5      A     Okay.

6      Q     What is the national standard when

7   it comes to skills?

8      A     To be measured by the department

9   through    accepted    police    administrative

10  practices.

11     Q     Okay.   What are accepted police

12  administrative practices?

13     A     All   those   things   we've   been

14  talking about.

15     Q     Okay.  And all the things that the

16  District  of  Columbia  is  doing;  is  that

17  correct?

18     A     What the city --

19     Q     That the District of Columbia is

20  doing is a yes or no answer.

21     A     No; it isn't.

22           MR.  MONTHY:    No,  no,  no.

168

1    Objection.  Go ahead.

2                THE WITNESS:  It is not a yes or

3    no.  What they're doing is the practice.  What

4    they're writing is -- if what they're writing,

5    yes, but -- the writing is fine.  But what

6    they're doing is something else.  All of this

7    paper -- and when you said that there was a

8    sunset clause, whatever you called that thing,

9    that says that all of this paperwork is

10   suspect, to me.

11               Listen just one second.  The Third

12   Circuit said that formalization is the last

13   refuge of scoundrels, and if you're telling me

14   that we're going to have all this paperwork

15   that says this is what you ought to do but no

16   one's going to get trained, no one's going to

17   get supervised, captains can overrule the

18   police chief, I think you have a problem.  I

19   think this case is "tip of an iceberg."

20               MS. VALDEZ:  i understand that,

21   except that you're speculating that that's

22   what the District of Columbia is doing, based

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
Anthony Bridgeforth,                                    )
                                                              )
                              Plaintiff,                    )
                                                              )
                              v.                             )          Civil Action No. 06-2128 (RCL)
                                                              )
Khadijah Bronson, <u>et</u> <u>al</u>.,                )
                                                              )
                              Defendants.              )
_____ )

**PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS
<u>AND STATEMENT OF GENUINE ISSUES NECESSARY TO BE LITIGATED</u>**

Pursuant to Local Civil Rule 7(h), plaintiff Anthony Bridgeforth respectfully

submits this response to the Statement of Material Facts as to Which There Is No Material Issue

filed by defendants Jose Acosta, James Carter, Darrell Johnson, Ralph McLean, Joseph Powell,

David Smith and the District of Columbia District of Columbia's (the "District Defendants").

**<u>COUNTER-STATEMENT OF MATERIAL FACTS</u>**

Mr. Bridgeforth hereby responds to Defendants' contentions of material fact as to

which there is no genuine issue as follows:

1.        Plaintiff Anthony Bridgeforth testified that he was the recipient of D.C. Housing

Authority Section Eight benefits since either the year 2000 or 2001.  *See* Plaintiff Anthony

Bridgeforth's deposition at 82:12-16 and 86:9-22, hereto attached as Exhibit 1.

<u>Response:</u>  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."  Mr.

Bridgeforth further disputes that his status with the Section 8 program anytime other than

January 2006 and the period immediately before then is material.

2.      Mr. Bridgeforth testified that sometime in November 2005, he saw some flyers at the D.C. Housing Authority for apartment rentals.  One flyer indicated that defendant Khadijah Bronson had two apartments available, one at 1718 E Street, N.E., and one at 210 20th Street, N.E. Bridgeforth dep. at 88:15-22, 89:1-3, 89:20-22, 90:1-18, and 91:3-15.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth further disputes Ms. Bronson advertised the lease of "1718 E Street, N.E."

Mr. Bridgeforth does not dispute the remaining facts underlying the alleged testimony

characterized in this paragraph.

4.      Plaintiff testified that the rental lease must be signed before he can move into the apartment under the D.C. Housing Authority program.  Bridgeforth dep. at 126:6-12.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

5.      Plaintiff testified that defendant Bronson took him up the steps at the apartment located at 210 20th Street, N.E., and to the right and showed him that unit but told him that "wasn't" his unit because "it wasn't finished," "the stove didn't work," and there was a lot of stuff wrong with the unit.  Bridgeforth dep. at 149:22-150-16.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth does not dispute that Ms. Bronson gave him a tour of a unit at 210 20th Street,

N.E. before the parties agreed to lease a unit to Mr. Bridgeforth.

6.      Plaintiff testified that defendant Bronson "assured" him that the unit to the right wasn't his unit.  Bridgeforth dep. at 156:6-22.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

7.      Plaintiff testified that defendant Bronson informed him that she had an emergency, her mother was sick and she wanted to meet with him to give him the keys to his unit.  Bridgeforth dep. at 158:1-4.

-2-

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

8.      Plaintiff did not sign a lease for the unit owned by defendant Bronson. Bridgeforth dep. at 115:9-22 and 116:1-3.

Response:  Mr. Bridgeforth does not dispute this fact.

9.      Plaintiff testified that on January 11, 2006, he returned to the D.C. Housing authority and signed a document indicating that "he didn't sign a lease" to be in the unit and wish not to stay in the unit because of the living conditions.  *See* January 11, 2006, letter from Anthony Bridgeforth hereto attached as Exhibit 3, and *See* also Bridgeforth's dep. at 211:6-22 and 212:1, hereto attached as Exhibit 1.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

10.     Plaintiff testified that on January 20, 2006, at around noon, he was in the back of the unit sleeping when he heard some "loud banging," so he called the police and told them that someone was trying to break into his house.  Bridgeforth dep. at 249:9-22, 250:1-8 and 252:18-21.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth does not dispute that he heard "loud banging" on the door of his apartment on

January 20, 2006 and that he called the police for assistance.

11.     Plaintiff testified that when the police got there, he heard defendant Bronson telling the police that she was the landlord and that he was in the unit illegally.  Bridgeforth dep. at 255:1-6.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

12.     Mr. Bridgeforth testified that the police officer informed Ms. Bronson that this was a landlord and tenant issue and there was nothing they could do.  *Id*. At 282:3-11.  Mr. Bridgeforth testified that he eventually left home and went to work.  *Id*. at 319:5-11.

-3-

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth does not dispute the facts underlying the alleged testimony characterized in this

paragraph.

13.    Lt. John Michael Hedgecock, one of the District's 30(b)(6) representatives, testified that on January 20, 2006, the Metropolitan Police Department received several calls to respond to 210 20th Street,  N.E., commencing at approximately 12:23p.m.  During several of those calls, a burglary in progress was reported.  *See* Lt. John Michael Hedgecock's deposition at 78:6-22, 83:19, hereto attached as Exhibit 4.

Response:  Mr. Bridgeforth does not dispute that John Michael Hedgecock

provided deposition testimony in this matter, but objects to any characterization of that testimony

as a "fact."

14.    Plaintiff testified that he returned from work at approximately 11:30 p.m. and the police was again at 210 20th Street, N.E.  *See* Anthony Bridgeforth's deposition at 319:5-16, hereto attached as Exhibit 1.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth does not dispute that police officers were on site at 210 20th Street, N.E. at

approximately 11:30 p.m. on January 20, 2006.

15.    Plaintiff testified that Officer Carter asked him if he had a lease for residing at the unit and he told the officer he "didn't have a lease," and didn't sign a lease.  Bridgeforth dep. at 329:22-330:4.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth does not dispute that he has discussions with police officers on the scene

regarding his tenancy rights.

-4-

16.    Plaintiff testified that he was told by the officers that since he was unable to produce a lease he had five minutes to go or he was going to be locked up for unlawful entry. Bridgeforth dep. at 342:18-343:2.

Response:  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

Mr. Bridgeforth does not dispute District of Columbia police officers ordered Mr. Bridgeforth to

vacate his apartment under threat of arrest.

17.    Defendant Bronson testified she called the police because plaintiff was in the unit and "he wasn't supposed to be there" and "he broke into the unit" while she was out of town. Bronson dep. at 151:1-12, hereto attached as Exhibit 5.

Response:  Mr. Bridgeforth does not dispute that Ms. Bronson provided

deposition testimony in this matter, but objects to any characterization of that testimony as a

"fact."

18.    Defendant Bronson testified that she called the captain and told him that she had somebody in the unit that did not want to live there, that she was away and when she came back he was in the unit illegally.  Bronson dep. at 173:15-22 and 174:1-20.

Response:  Mr. Bridgeforth does not dispute that Ms. Bronson provided

deposition testimony in this matter, but objects to any characterization of that testimony as a

"fact."

19.    Defendant Bronson also told the captain that she had a document indicating that plaintiff was not supposed to be there.  Bronson dep. at 173:15-22 and 174:120.

Response:  Mr. Bridgeforth does not have a basis to dispute this fact, but such a

document has not been produced in discovery.

20.    Defendant Bronson showed the officers a document reflecting that plaintiff had not signed a lease, and the he indicated that he didn't want the apartment.  Bronson dep. at 173:15-22 and 174:120.

Response:  Mr. Bridgeforth does not have a basis to dispute this fact, but such a

document has not been produced in discovery.

-5-

21.     Defendant Bronson also reported to Captain McLean that plaintiff was a "locksmith or had access to a locksmith" and "she swore she hadn't given him a key."  McLean dep. at 39:18-41:18, hereto attached as Exhibit 6.

      <u>Response:</u>  Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

22.     Defendant Officer Carter testified that he accomplished plaintiff to the unit and "there wasn't much in there," a bag of clothes or two," which supported his belief that plaintiff was a squatter and on the property illegally.  *See* James Carter's dep. at 32:2-21, hereto attached as Exhibit 7.

      <u>Response:</u>  Mr. Bridgeforth does not dispute that James Carter provided

deposition testimony in this matter, but objects to any characterization of that testimony as a

"fact."

23.     Defendant Smith testified that plaintiff's girlfriend was in the apartment and he believed she was "causing a commotion."  *See* David Smith's dep. at 27:8:21, hereto attached as Exhibit 8.

      <u>Response:</u>  Mr. Bridgeforth does not dispute that Officer Smith provided

deposition testimony in this matter, but objects to any characterization of that testimony as a

"fact."

24.     Plaintiff's expert R. Paul McCauley testified that in his opinion the District of Columbia did not violate a national standard of case when it comes to training police officers. *See* R. Paul McCauley's dep. at 143:19-22 and 144:11, hereto attached as Exhibit 3.

      <u>Response:</u>  Mr. Bridgeforth does not dispute that R. Paul McCauley provided

deposition testimony in this matter, but disputes this characterization of that testimony.

25.     Mr. McCauley also opined that the Metropolitan Police Department's General Order regarding evictions that are provided to police officers in the District of Columbia are consistent with accepted police practices.  R. Paul McCauley's dep. at 60:19-22 and 61:1-13.

      <u>Response:</u>  Mr. Bridgeforth does not dispute that R. Paul McCauley provided

deposition testimony in this matter, but disputes this characterization of that testimony.

25.    Mr. McCauley testified that for a period of 10 years, between 1998 and 2008, there were only three instances of alleged unlawful evictions in the District of Columbia. R. Paul McCauley's dep. at 132:11-22 and 133:1-15.

Response: Mr. Bridgeforth does not dispute that R. Paul McCauley provided

deposition testimony in this matter, but disputes this characterization of that testimony.

26.    Plaintiff testified that he called defendant Bronson to let her know that he didn't have the keys and she told him that she gave him the **wrong** keys and she would send the handyman to bring the right keys. Bridgeforth dep. at 173:12-22, 174:1-22 and 175:1.

Response: Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

27.    Plaintiff claims that his girlfriend Ms. Geter and her mother told him to try to see if the key would open the door to the unit to the right. Plaintiff tried the key in the unit to the right and the key worked. Pl.'s dep. at 173:12-22, 174:1-22 and 175:1.

Response: Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

28.    Plaintiff avers that the handyman left keys under the mat of the apartment to the right. Plaintiff testified that he tried this key in the unit to the left and it didn't work, but it opened the door to the unit to the right. Pl.'s dep. at 180:19-22, 181:1-22, and 182:1-22.

Response: Mr. Bridgeforth does not dispute that he provided deposition

testimony in this matter, but objects to any characterization of that testimony as a "fact."

## ADDITIONAL STATEMENT OF GENUINE ISSUES

In addition to the counter-statement above and the material facts and genuine

issues identified therein, Mr. Bridgeforth hereby adopts and incorporates the facts set forth in

Mr. Bridgeforth's April 7, 2008 statement of facts material to Mr. Bridgeforth's own motion for

summary judgment as to which no genuine dispute exists.

\\\DC - 090334/010285 - 2709229 v1

Respectfully submitted,

HOGAN & HARTSON LLP

By: /s/ Jeremy T. Monthy_____
    Adam K. Levin (#460362)
    Jeremy T. Monthy (#468903)
    555 Thirteenth Street, N.W.
    Washington, D.C.  20004
    (202) 637-5600
    (202) 637-5910 (fax)

Dated:  May 23, 2008          Counsel for Plaintiff Anthony Bridgeforth

\\\DC - 090334/010285 - 2709229 v1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

Anthony Bridgeforth,                          )
                                              )
                    Plaintiff,                )
                                              )
              v.                              )      Civil Action No. 06-2128 (RCL)
                                              )
Khadijah Bronson, <u>et</u> <u>al</u>.,      )
                                              )
                    Defendants.               )
_____ )


## <u>ORDER</u>

Upon consideration of the motion for summary judgment filed by defendants Jose Acosta, James Carter, Darrell Johnson, Ralph McLean, Joseph Powell, David Smith and the District of Columbia, the Memorandum of Points and Authorities filed in support thereof, the Opposition of plaintiff Anthony Bridgeforth, any Reply, the Statement of Material Facts as to which defendants Jose Acosta, James Carter, Darrell Johnson, Ralph McLean, Joseph Powell, David Smith and the District of Columbia contend there is no genuine issue, the Counter-statement thereto, and the entire record herein, it is hereby

ORDERED, that the motion for summary judgment filed by defendant Jose Acosta, James Carter, Darrell Johnson, Ralph McLean, Joseph Powell, David Smith and the District of Columbia plaintiff Anthony Bridgeforth's motion be, and it hereby is, DENIED.

SO ORDERED this ___ day of _____, _____.


_____
UNITED STATES DISTRICT JUDGE


Copies to:

Adam K. Levin, Esq.
Jeremy T. Monthy, Esq.
HOGAN & HARTSON, LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004


Leticia L. Valdes, Esq.
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001


Darryl F. White, Esq.
4308 Georgia Ave., N.W.
Washington DC 20011