UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Anthony Bridgeforth, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-2128 (RCL) |
| | ) |
| Khadijah Bronson, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CONSOLIDATED REPLY IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The oppositions filed by (a) defendant Khadijah Bronson and (b) the District of

Columbia, individual MPD officers, and their supervisor Captain McLean (the "District

Defendants") make the same critical mistake:  neither paper disputes any of the facts material to

Plaintiff Anthony Bridgeforth's claims or motion for summary judgment.  Everyone agrees that

Ms. Bronson and MPD officers removed Mr. Bridgeforth from his apartment without a court

order.  There also is no dispute that landlords like Ms. Bronson may only evict tenants after

obtaining such an order from Landlord and Tenant Court.  This case shows why this process

makes sense; while Mr. Bridgeforth and Ms. Bronson bickered in court proceedings over whether

he had a legal right to reside at 210 20th Street, N.E.—the Court held that he did—

Mr. Bridgeforth was out on the streets in January incurring monetary and emotional damage.

This case is an effort to be compensated for that damage.

This case also is about the District's failure to live up to its own, similarly

uncontested, policies.  MPD policy not only states that Ms. Bronson's "self-help" measures are

- 1 -

illegal and that officers are prohibited from participating in them, but it also—importantly—instructs officers not to even "become involved" in disputes that may lead to such acts. See MPD Circular 01-03, Ex. 15 to Pl.'s Mot. for Summary Judgment (emphasis added). Now, over two years later, Defendants essentially argue that not only were they entitled to "become involved" in such a dispute, but also that it was reasonable for them to displace the Landlord and Tenant Court and serve as a curb-side judge and jury over whether Mr. Bridgeforth was a "tenant" or a "squatter" as a matter of law. The District Defendants even go so far as to portray their role as evaluating whether "Plaintiff was on the property unlawfully." See Defs.' Memo. of Points and Authorities in Response and Opp. to Pl.'s Mot. for Summary Judgment, filed May 23, 2008 [D.E. 28] ("District Opp."), at 11 (emphasis added).

As discussed in Mr. Bridgeforth's other filings and below, this argument cannot withstand scrutiny. Regardless of what Defendants argue now, Ms. Bronson assuredly felt that Mr. Bridgeforth had a legal right to reside in her apartment when she was (successfully) lobbying for the Housing Authority to pay his rent before she evicted him on January 20, 2006, 1/ and the MPD officers on the scene have testified that they understood the hectic and confusing scene to be "a landlord/tenant dispute." 2/ More importantly for present purposes, Defendants have completely failed to muster a single disputed fact or legal theory to support their argument. Mr. Bridgeforth therefore is entitled to a judgment pursuant to Fed. R. Civ. P. 56(a) and (d) that Defendants are liable for wrongful eviction, intentional infliction of emotional distress, and violation of Mr. Bridgeforth's constitutional rights and Section 1983 enforcing those rights.

---

1/    See Bronson Dep., Ex. 2 to Pl.'s Mot. for Summary Judgment, at 140:17–141:21 & 143:18–20.

2/    See Carter Dep., Ex. 4 to Pl.'s Mot. for Summary Judgment, at 18:13–14.

# ARGUMENT

Ms. Bronson makes two points in her four-page opposition to Mr. Bridgeforth's motion for summary judgment: (1) Mr. Bridgeforth was not entitled to reside in her unit on the night at issue because he had not signed the lease papers and had informed the Housing Authority that he wished to quit the lease in the future; and (2) Ms. Bronson's actions were not egregious enough to support an award of punitive damages. See Def. Khadijah Bronson's Opp. to Pl.'s Mot. for Summary Judgment, filed May 23, 2008 [D.E. 30] ("Bronson Opp."). 3/ The District Defendants make three points in their opposition to Mr. Bridgeforth's motion: (1) the same first point as Ms. Bronson regarding Mr. Bridgeforth's tenancy status; (2) the District itself is not liable because no "custom and practice" has been established, Mr. Bridgeforth allegedly lacks expert testimony on his failure to train and supervise claims, and Captain McLean was not capable of setting policy for the MPD; and (3) the individual MPD officers on the scene are entitled to qualified immunity. See District Opp. These four combined points, however, are not supported by—and may even confuse and flat out misstate—the undisputed facts or the applicable law.

---

3/      Ms. Bronson did not file any opposition or counter-statement in response to Mr. Bridgeforth's Statement of Material Facts as to Which There Is No Genuine Issue, and she did not raise any argument in her opposition regarding Mr. Bridgeforth's intentional infliction of emotional distress claim. As a result, the Court should assume all facts set forth by Mr. Bridgeforth are admitted by Ms. Bronson, see Local Civ. R. 56.1; S.E.C. v. Banner Fund Intern., 211 F.3d 602, 616 (D.C. Cir. 2000), and should find that Ms. Bronson has conceded liability under Count VII of the Amended Complaint. See Hodes v. United States HUD, 532 F. Supp.2d 108, 117 (D.D.C. 2008) ("A Party that fails to refute an opposing party's argument on Summary Judgment may be found to have conceded the point.").

**I.**       **DEFENDANTS' RETROSPECTIVE ANALYSIS OF
            MR. BRIDGEFORTH'S TENANCY RIGHTS IS ESTOPPED, WRONG,
            AND IRRELEVANT.**

The leading argument in both oppositions is that Mr. Bridgeforth did not actually

have a legal right to be in the apartment from which all parties agree he was evicted.  See

Bronson Opp. at 1–2; District Opp. at 1–3.  The key fact underpinning both arguments is the

"absence of a [written] lease agreement between the parties."  See Bronson Opp. at 1.  The

District Defendants then take the argument one step further by claiming that Mr. Bridgeforth was

"told to leave under § 22-3302," the District's "unlawful entry" provision, rather than as a

possible tenant.  See District Opp. at 2–3.  All of this latter-day analysis fails, however, for four

reasons.

First, Ms. Bronson is barred from relitigating this very issue because she already

tried to convince D.C. Superior Court Judge Robert Morin that Mr. Bridgeforth was not entitled

to reside in her unit and she lost.  In Mr. Bridgeforth's opening brief, he explained that the

doctrine collateral estoppel applies to Defendants' primary argument based on a full and final

factual finding made just two weeks after the incident on February 2, 2006.  See Pl.'s Mot. for

Summary Judgment, filed Apr. 7, 2008 [D.E. 25] ("Bridgeforth Motion"), at 16–17.  Ms.

Bronson ignored this inconvenient truth in her opposition, and, in so doing, conceded the point.

See Hodes, 532 F. Supp.2d at 117.

Second, even if Ms. Bronson was free to take a second bite at this particular apple,

her and the District Defendants' position that Mr. Bridgeforth had no legal tenancy rights because

"he didn't sign a lease" is contrary to law.  District Opp. at 2; see also Bronson Opp. at 1.  As set

forth in more detail in Mr. Bridgeforth's Opposition to the District Defendants' own motion for

summary judgment, see [D.E. 29] ("Bridgeforth Opp.") at 14–15, District of Columbia statutory

and case law clearly provide that tenancies may arise by oral agreement alone. See D.C. Code §
45-220; Cavalier Apartments Corp. v. McMullen, 153 A.2d 642 (D.C. 1959). This is especially
true where, as here, the alleged tenant "had an oral agreement to occupy the apartment in
exchange for regular monthly rental payments." Young v. District of Columbia, 752 A.2d 138,
143 (D.C. 2000) (citations omitted). Accordingly, before the Court even considers whether the
presence or absence of a written lease could derail Mr. Bridgeforth's motion for summary
judgment, 4/ it should discount any suggestion that Defendants could rely solely on a written
lease when they acted contrary to District law and MPD policy.

Third, if the Court is willing to look past these threshold flaws in Defendants'
argument and determine whether a landlord/tenant relationship existed on the night of January
20, 2006 as "a question of law" as the District Defendants invite, see District Opp. at 1, the
record evidence is ample and uncontroverted in support of a finding that Mr. Bridgeforth was
"supposed to be a tenant." See Bronson Dep. at 174:16. Under District of Columbia law, the
Court looks to the circumstances surrounding the use and occupancy of the property to determine
whether a landlord-tenant relationship exists. See Anderson v. William J. Davis, Inc., 553 A.2d
648, 649 (D.C. 1989). Defendants have not, and indeed cannot, dispute the following such
circumstances:

- Ms. Bronson and Mr. Bridgeforth met personally to initiate the lease
  (Bronson Dep. at 57:9–12 & 92:12–19);

- Ms. Bronson asked the Housing Authority to begin the tenancy "ASAP"
  before January 20, 2006 (id. at 70:11–20);

- Ms. Bronson attended inspections of Mr. Bridgeforth's unit before January
  20, 2006 (id. 82:7–10, 105:2–17 & 112:4–8);

---

4/    It cannot because the absence of Mr. Bridgeforth's signature on the lease prepared and
executed by Ms. Bronson is not in dispute.

- Ms. Bronson made repairs to Mr. Bridgeforth's unit between January 10 and 20 in response to those inspections (id. at 85:14–17 & 112:14–18);

- Ms. Bronson went through the entire Section 8 "lease up" process with Mr. Bridgeforth (id. at 54:18–21), including

   o Requesting tenancy approval from the D.C. Housing Authority (Ex. 25 to Pl.'s Mot. for Summary Judgment),

   o Completing a payment information form (id.),

   o Filling out tax forms to facilitate rent payment (id.),

   o Providing a copy of the dead to the Housing Authority (id.),

   o Generating both a lease and a management agreement for Housing Authority review (id.), and

   o Complying with "Basic Section 8 Inspection Division Housing Standards" (id.);

- Ms. Bronson herself signed the lease before January 20, 2006 (id. at 124:1–9); and, most importantly;

- Ms. Bronson received rent of over $1,000 per month for Mr. Bridgeforth to reside at 210 20th Street, N.E. in January 2006 and beyond (id. at 134:6–21).

On the other side of the ledger, Defendants assert that Mr. Bridgeforth did not sign the lease Ms. Bronson filled out and executed and that Mr. Bridgeforth wrote a note nine days before his eviction stating that did not want to stay in Ms. Bronson's unit "because of the living conditions." See Bronson Opp. at Ex. 1; see also District Opp. at 9. The first fact is not dispositive for the reasons set forth above. And the second fact is not even material because, even if a handwritten note by Mr. Bridgeforth to a third party could operate as a binding notice to vacate, his "wish" would not have taken effect until three weeks after Defendants kicked him out of his apartment. See, e.g., D.C. Code § 42-3505.01(b) (providing 30-day period to vacate after proper notice provided); see also Bronson Dep. at 204:7–12 ("If [tenants] say they want to move

out they have 30 days until they're officially out or then you start your process."). 5/

Accordingly, even if these facts were in dispute—they are not—they could not defeat Mr.

Bridgeforth's motion for summary judgment.

       Fourth, regardless of how the supposed issue of Mr. Bridgeforth's tenancy rights

is addressed between Mr. Bridgeforth and Ms. Bronson, the District Defendants cannot rely on

this theory to escape liability.  The very fact, which the District Defendants admit in their

opposition, that "[t]he defendant Officers at the scene heard Defendant Bronson's side of the

story and reviewed Plaintiff's paperwork," see, e.g., District Opp. at 8, places the District

Defendants in violation of MPD policy prohibiting officers from "becom[ing] involved" in such

disputes.  It was Judge Morin's role to adjudicate the dispute, not officers on the scene (or, in

Captain McLean's case, away from the scene on a mobile telephone).

       The District Defendants attempt to confuse this straight-forward cocept in two

ways without success.  First, the District Defendants try to recast Mr. Bridgeforth's claims as

ones for false arrest under the "unlawful entry" statute.  See District Opp. at 2–3.  Invocations of

"probable cause to arrest" and the elements of D.C. Code Section 22-3302 fall flat, though,

because the District Defendants rightly concede that Mr. Bridgeforth was never arrested for

unlawful entry.  See id. at 3 n.1.  More importantly, the entire unlawful entry discussion is based

on false premise.  The District Defendants demonstrate a misunderstanding of the crux of this

case when they make statements such as: "The Defendants' decision to ask Plaintiff to leave the

apartment was based on § 22-3302, not because of any landlord/tenant dispute."  Id. at 3

---

5/      Ms. Bronson also states, without any citation to record evidence or an affidavit, that she "did not provide the plaintiff with access to the property by turning over any keys or have [sic] anyone make arrangements to provide assess [sic] to the unit."  Bronson Dep. at 2.  Judge Morin

(emphasis added). Mr. Bridgeforth is not entitled to summary judgment because of the particular reasons behind the officers' actions; he is entitled to summary judgment because the officers acted in the first place.

Next, when the District Defendants finally get around to addressing the core source of their liability directly, they portray it in policy terms that are so exaggerated that they are rightly called "absurd." See id. at 11. Contrary to their rhetoric, holding the District Defendants accountable for violating MPD policy here is not tantamount to ruling, "as a matter of constitutional law, that a police officer, summoned to mediate a volatile dispute involving an alleged trespasser, is obliged to leave the situation unresolved simply because the trespasser represents himself to be entitled to be there." Id. The undisputed facts adduced in this case from the officer in charge of the scene alone show that the officers heard Ms. Bronson's side of the story, see Carter Dep. at 24:10–20, reviewed Mr. Bridgeforth's paperwork, see id. at 14:10–11, and understood the dispute to "be a landlord/tenant dispute" from the very beginning because "it was dispatched as so." Id. at 18:13–14, 17. Again, the District Defendants' inability to address the central argument head on defeats their argument.

## II.    THE DISTRICT DEFENDANTS DO NOT DIRECTLY ADDRESS, MUCH LESS REFUTE, MR. BRIDGEFORTH'S MUNICIPAL LIABILITY CLAIMS.

The District Defendants also attempt to undercut Mr. Bridgeforth's municipal liability arguments in two, equally unavailing, ways. First, the District Defendants recycle "custom and practice" argumentation made in their own affirmative motion for summary judgment. See District Opp. at 4–7. The District Defendants specifically admonish

---

heard that very assertion in previous proceedings and found it to be false. See Ex. 13 to Pl.'s Mot. for Summary Judgment at 40.

Mr. Bridgeforth for "failing to establish that any District custom, policy or practice resulted in his alleged wrongful eviction . . . ." Id. at 6. But repeating these arguments does not make them any more relevant to this case. As explained in the response to the District Defendants' motion, see Bridgeforth Opp. at 6–7, Mr. Bridgeforth does not seek relief under Section 1983 based on a custom, policy, or practice determination. Instead, this case involves allegations that the District and certain its officer should be held liable for, inter alia, deliberate indifference with respect to the training, supervision, and/or implementation of an otherwise acceptable policy. See id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000); Parker v. District of Columbia, 850 F.2d 708, 712 (D.C. Cir. 1988)). In other words, the municipal liability issue here is not whether eviction and training policies were actually written by the District (they were), or whether the eviction and training policies were acceptable on their face (they appear to be), but whether the eviction and training policies were taught and implemented.

The undisputed fact and expert evidence shows that they were not. Indeed, the District Defendants do not appear to have anything to say regarding Mr. Bridgeforth's demonstration that, at best, the District has implemented only one of the five "training program" elements listed on page 6 of the District Defendants' opposition, see Bridgeforth Motion at 24–28, and that the District has been deliberately indifferent with respect to discipline and tracking of the MPD eviction policy. See id. 28–30. Rather, the District Defendants' only response—that Mr. Bridgeforth has failed to support these points "with expert testimony," see District Opp. at 6–7—has already been proven to be utterly false. See Bridgeforth Opp. at 8–9 (citing testimony of unopposed expert witness Dr. Paul McCauley).

<u>Second</u>, the District Defendants try to shrug off Mr. Bridgeforth's argument that municipal liability attaches because Captain McLean made an unconstitutional policy decision while serving at the highest relevant policymaking level, <u>see</u> Bridgeforth Motion at 31–32 (citing <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988)), with conclusory statements that Captain McLean is not "a final policymaker" at the MPD. <u>See</u> District Opp. at 7. It is hornbook law, however, that, a party responding to a properly supported motion for summary judgment must rely on more than "mere assertions" in order to raise a material issue of fact . <u>See</u> <u>Bloomgarden v. Coyer</u>, 479 F.2d 201, 208 (D.C. Cir. 1973). Yet the District Defendants do not cite a single document, deposition, affidavit, or case—not one—to refute Mr. Bridgeforth's properly supported argument that Captain McLean did indeed have "final authority" as construed under Section 1983 law and then misused it. Mr. Bridgeforth is therefore entitled to summary judgment on this point.

## III.     THE INDIVIDUAL OFFICER DEFENDANTS FAIL TO JUSTIFY QUALIFIED IMMUNITY PROTECTION.

With the submission of this reply and the reply of the District Defendants due to be filed on the same day, the issue of qualified immunity will have been briefed six times in this action. Yet the District Defendants appear to be no closer to understanding why arguing, as they do in their opposition, that Captain McLean and the MPD officers on the scene directly involved themselves in the "chaotic situation," engaged in a protracted investigation, and eventually concluded "that Plaintiff was on the property unlawfully," <u>see</u> District Opp. at 8–12, helps Mr. Bridgeforth's cause more than theirs. The District Defendants' immunity argument might have some traction if the issue in this case was whether Captain McLean's decision to treat Mr. Bridgeforth as a "squatter" was right or wrong. But it is not. As discussed above, the real

issue in this case is whether Captain McLean had any business exercising discretion <u>at all</u> once it became clear that Ms. Bronson and Mr. Bridgeforth had a landlord/tenant dispute.

Mr. Bridgeforth therefore incorporates, by reference, the arguments in pages 22 through 23 of his initial motion and pages 10 through 14 of his opposition to the District Defendants motion, which conclusively show that qualified immunity does not apply here because the law was clearly established and Captain McLean and the other individual MPD defendants just as clearly violated it.

## IV.    MS. BRONSON'S APPARENT DAMAGES ARGUMENT IS NOT A BASIS TO DENY SUMMARY JUDGMENT.

Finally, Ms. Bronson's second argument, that "the plaintiff has not presented any evidence of emotional distress" is as unsuccessful as it is inscrutable.  Ms. Bronson appears to be arguing, without reference to any affidavits or facts adduced in discovery, that summary judgment is not appropriate because the degree of Ms. Bronson's malicious intent, and therefore the level of punitive damages, if any, has not been nailed down.  <u>See</u> Bronson Opp. at 3. Assuming <u>arguendo</u> that "questions of fact" on this point have indeed been raised, this still is no bar to a finding in Mr. Bridgeforth's favor now for two reasons.

<u>First</u>, as a legal matter, Ms. Bronson is wrong to imply that a wrongful eviction judgment would not entitle Mr. Bridgeforth to emotional distress damages absent some heightened evidentiary showing.  A case Ms. Bronson herself cites, <u>Robinson v. Sarisky</u>, stands for the proposition that damages are "presume[d]" upon a finding of wrongful eviction.  <u>See</u> 535 A.2d 901, 906 (D.C. 1988).  The <u>Robinson</u> court went on to hold that:

> "[Such damages] are not limited to physical injury or
> property loss.  This court long ago accepted the principle
> 'that a tenant who has been unlawfully evicted may recover
> for mental suffering, inconvenience and discomfort.'"

Id. (citing Higgins v. Dail, 61 A.2d 38, 40 n.2 (D.C.1948)).  Likewise, the Robinson court and many others have long held that "[p]unitive damages are available in actions for intentional torts such as wrongful eviction."  Id. (citations omitted).  Mr. Bridgeforth has adduced sufficient undisputed facts in discovery to permit a jury to award both types of damages in this case.

Second, as a practical matter, issues of emotional and punitive damages present no obstacle to granting Mr. Bridgeforth's motion because damages can, and should, be assessed in separate jury proceedings once the Court has rendered a liability finding in favor of Mr. Bridgeforth.  As the proposed order filed with his initial motion indicates, Mr. Bridgeforth's consistent request has been to bifurcate these proceedings in light of Defendants' uniquely obvious liability.  The amount of damages would therefore be left to the jury's discretion consistent with common practice.  See Robinson, 535 A.2d at 907 (citations omitted).  Fed. R. Civ. P. 56(d)(2) expressly provides for such a procedure "even if there is a genuine issue on the amount of damages."  Accordingly, Ms. Bronson's apparent argument that the punitive damages award against her should be low because she believed her actions to be "reasonable" is best left for another day.

## CONCLUSION

For the foregoing reasons and the reasons set forth in his initial motion for summary judgment, plaintiff Anthony Bridgeforth respectfully asks this Court to grant his motion for summary judgment as to Defendants' liability.

Respectfully submitted,

HOGAN & HARTSON LLP


By: /s/ Jeremy T. Monthy_____
      Adam K. Levin (#460362)
      Jeremy T. Monthy (#468903)
      555 Thirteenth Street, N.W.
      Washington, D.C.  20004
      (202) 637-5600
      (202) 637-5910 (fax)

Dated:  June 6, 2008                Counsel for Plaintiff Anthony Bridgeforth