UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Anthony Bridgeforth,

    Plaintiff,

  v.

Khadijah Bronson, *et al.*,

    Defendants.

C.A. No.: 06-2128 (RCL)

**DEFENDANTS OFFICER JOSEPH A. POWELL, OFFICER JAMES L. CARTER, OFFICER JOSE ACOSTA, OFFICER DARRELL D. JOHNSON, OFFICER DAVID SMITH, CAPTAIN RALPH W. MCLEAN AND THE DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT**

    Defendants Officer Joseph A. Powell (hereinafter "Powell"), Officer James L. Carter (hereinafter "Carter"), Officer Jose Acosta (hereinafter "Acosta"), Officer Darrell D. Johnson (hereinafter "Johnson"), Officer David Smith (hereinafter "Smith"), Captain Ralph W. McLean (hereinafter "McLean"), and the District of Columbia (hereinafter "District"), by and through counsel, herein submit their reply to plaintiff's opposition to their Motion for Summary Judgment, and state as follows:

    A.    **Plaintiff Has Failed to Produce Evidence in this Record That Rebuts the District's Entitlement to Summary Judgment Since There Is No Evidence that A District Custom, Policy or Practice Was The Moving Force Behind His Alleged Constitutional Injury or That A Final Policymaker Was Responsible for the Alleged Constitutional Deprivation.**

    Plaintiff seeks to hold the District liable under 42 U.S.C. § 1983, for his alleged constitutional deprivation because of alleged (a) deliberately indifferent training, (b) deliberately indifferent supervision, and (c) a final decision by the pertinent final decision maker. Pl.'s Opp. at pg. 6. Plaintiff has utterly failed to present proof to satisfy his

burden and to establish his claim of municipal liability. *See Toy v. District of Columbia,* 549 A.2d 1, 7 (D.C. 1988); *see also District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987) (expert testimony required in criminology/law enforcement); *District of Columbia v. White,* 442 A.2d 159, 164-65 (D.C. 1982) (expert testimony required to determine if police breached standard of care); *Dist. of Columbia v. White,* 442 A.2d 159, 164 (D.C.1982) (requiring expert testimony concerning adequacy of the MPD's weapons safety training); *Etheridge v. Dist. of Columbia,* 635 A.2d 908, 917-18 (D.C.1993) (expert testimony regarding the recognized standards of care for police training, supervision, and use of force). Although Plaintiff designated an expert to opine on the District's training and supervision of its employees, the expert has not shown that the District's training or supervision failed to satisfy the applicable standard of care or was otherwise deficient. Quoting from his expert's deposition, Plaintiff argues that his expert's opinion that "[the District] did not do what they said they were supposed to do…" is sufficient to show that the District was deliberately indifferent to training its officers. An attempt to bolster his proof of his claims, Plaintiff avers that his expert also opined that because there was a court order about evictions, the District "had to have some kind of training, they had to have a policy, they had to do these kinds of things…and [the District hasn't] done it." Opp. at pg. 9. An expert must do more than provide his personal opinions. His opinions must satisfy the requirements of Fed. Civ. R. 702, and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Rule 702 provides that the expert's testimony must be based upon sufficient facts or data, be the product of reliable principles and the expert must apply the principles and methods reliably to the facts of the case. The *Daubert* Court recognized

that under the Federal Rules of Evidence, all scientific testimony or evidence must be supported by appropriate standards of reliability. 509 U.S. at 591-592.

In this case, Plaintiff's expert's testimony does not satisfy the requirements of Rule 702 or *Daubert*. First, Plaintiff's expert testified that there was a Court Order [presumably in the *McMillian* case] requiring the District to provide training. However, no such Court Order exists. Instead, the District entered into a settlement agreement with the *McMillian* plaintiffs. *See McMillian v. Davis,* Civil Action No.: 98-7746 (D.C. Super). Second, according to Plaintiff's expert, without evidentiary support as the basis for the opinion, the District did not provide the training it claimed it was going to do. Plaintiff has not included any proof in this record that the District failed to provide the training it agreed to provide in *McMillian*. Most importantly however, Plaintiff has failed to show what training was required by national standards that the District failed to provide to its officers. Absent proof that the District failed to meet the required national standard with respect to training, Plaintiff's failure to train claim fails as a matter of law.

Similarly, with respect to the failure to supervise claim, there is no evidence in this record that the District failed to supervise its employees. Plaintiff has not produced specific situations or incidents which evidence a failure to supervise and/or show that the District knew or should have know that closer supervision was required. Instead, Plaintiff argues that because no investigation was allegedly conducted after the subject incident, and took no disciplinary or remedial action, he has established the District's failure to supervise. See Opp. at pg. 10. Plaintiff's alleged proof do not go to supervision, and do not show any deficient supervision which rises to the level of a constitutional deprivation. Moreover, with respect to the incident that forms the basis of

3

this litigation, the evidence shows that the Defendant officers at the scene were supervised by Defendant Captain Ralph W. McLean Absent evidence from his expert that the District's supervision was below the national standard of care, and the District was deliberately indifferently to the need for stricter supervision, Plaintiff's failure to supervise claim fails as a matter of law.

Lastly, Plaintiff has not shown that any final policymaker's decision resulted in Plaintiff's alleged constitutional injury. Plaintiff would have this Court rule that anytime any officer or higher ranked employee made a decision it was a final decision by a final policymaker. To support his claim of proof, Plaintiff argues that because Defendant McLean, a captain within the D.C. Metropolitan Police Department, made the decision to allegedly evict Plaintiff, he has established that a final policymaker caused his injury. Defendant McLean is not the final policymaker for the D.C. Metropolitan Police Department. There are several chains of commands that are ranked higher than lieutenant. See D.C. Official Code § 5-105.05. In fact, at the time of the incident that forms the basis of this lawsuit, Charles Ramsey was the Chief of the D.C. Metropolitan Police Department, and there is no evidence that he made a final decision that caused Plaintiff's alleged injuries. While on one hand Plaintiff argues that the District had a policy against landlord-tenant evictions, he then argues that Defendant McLean's decision to evict set policy for the police department. Plaintiff's failure to show that any District custom, practice or policy was the moving force behind his constitutional injury or that a final policymaker was responsible for his injuries, requires judgment in favor of the District. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985), that, "at the very least there must be an affirmative link between the policy and the particular

4

constitutional violation alleged." The *Oklahoma City* decision interpreted *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978), as holding that "municipal liability should not be imposed *when the municipality was not itself at fault*." *Id.* at 818 (emphasis added).

### B. **Plaintiff Has Failed to Defeat the Individually Named Defendants' Entitlement to Qualified Immunity.**

In an effort to defeat these defendants' entitlement to qualified immunity, Plaintiff cites and refers to their deposition testimony that the call to which they responded was initially dispatched as a landlord-tenant dispute. See Opp. at pg. 12. To end the inquiry here would impose strict liability on officers merely because of the type of dispatch they receive prior to arriving on an incident scene. Plaintiff would have this Court find that the officers should not have responded to the scene at all because of the type of dispatched received. Or, if they did respond to the scene and learn that the dispatch was in error, that they must leave the scene because of the initial dispatch. Clearly, that cannot be the law.

According to the evidence adduced in this record, when the Defendants arrived on the scene, Co-Defendant Bronson showed these Defendants a document that evidenced Plaintiff indicated he did not want the apartment that he was now in. In fact, Co-Defendant Bronson told these Defendants that Plaintiff had broken into the apartment while she was away and without her permission. She testified that she had not given Plaintiff the key. *See* Bronson dep. at 151:1-12, hereto attached as Exhibit 2. See also, Defendant McLean testimony that Co-Defendant Bronson told him that Plaintiff was a "locksmith or had access to a locksmith" and "she swore she hadn't given him a key." McLean dep. at 39:18-41:18, hereto attached as Exhibit 3. Based on the information

5

presented to them while they were on the incident scene, these Defendants in good faith believed that Plaintiff was unlawfully on the premises and refused to leave. Faced with these facts, and their knowledge of the unlawful entry statute, in lieu of arresting Plaintiff, he was asked to leave the premises. *See* D.C. Official Code § 22-3302, providing for the punishment of anyone who remains on either private or public property without lawful authority and who refuses to leave on the demand of the person lawfully in charge. *See also O'Brien v. United States*, 444 A.2d 946, 948 (D.C. 1982) ("the mere demand of the person lawfully in charge to leave necessarily deprives the other party of any lawful authority to remain"). Accordingly, these Defendants are entitled to qualified immunity and the claim against them fails as a matter of law.

    C.    **Plaintiff Was Not Unlawfully Evicted, But Was Removed Subject to the Unlawful Entry Statute.**

Plaintiff claims that the District Defendants' argument that he was unlawfully evicted because he did not have a fully-executed lease is wrong. Contrary to Plaintiff's claim, the District Defendants do not admit or agree that Plaintiff was evicted. Instead, these Defendants argue that in accordance with the unlawful entry statute, Plaintiff was asked to leave the premises. At the time of the incident that forms the basis of this lawsuit, these Defendants had no knowledge that rent had been paid for the apartment on behalf of Plaintiff. In fact, there is no evidence in this record that Plaintiff told the Defendants that rent had been paid on his behalf. See Pl.'s Opp, generally.

In his opposition, Plaintiff uses **portions** of the testimony of Officer Darrelle Johnson to **imply** that the Defendant Officers on the scene knew that the rent had been paid. Plaintiff actually misleads this court by indicating that "[a]nd at least one of the individual officers admitted that the MPD "should not have gotten involved" **once it was known** that

6

"rent had been paid up for that month." See Pl.'s Opp, p. 15, emphasis added.  It was never known by the Officers on the scene that rent had been paid.  Plaintiff fails to mention that Officer Johnson provided that response when responding to a <u>hypothetical</u> question.  Plaintiff's counsel posed the following question to Officer Johnson:  **"And what would you have done <u>had you known</u> that rent had been paid?"** *See* Officer Darrelle Johnson's deposition at 52:17-22 and 53:1-19, hereto attached as Exhibit 1. Officer Johnson responded to the hypothetical by stating what he would have done **"if [he] <u>would have known</u> that rent had been paid up for that month."** *Id.*  Plaintiff's quoting only portions of Officer Johnson's testimony is disingenuous and is an attempt to confuse this court. There simply is no evidence to support the notion that these Defendants' had knowledge at the scene that rent had been paid for the rental unit. In fact, evidence regarding the payment of rent for the subject property was learned well after the incident and did not nor could it have factored in the Defendants' decision made on the scene.  This court must consider the facts as they would have been perceived by a reasonable officer on the scene, and not with the 20/20 vision that comes with knowledge of the full landscape of the facts.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  It is telling in this case that when presented with the facts as they were available to the Officers on the scene plaintiff's own expert testified as follows:

> Q. So if the landlord says, I didn't give him the key, I didn't sign a lease, he didn't sign a lease with me, it is still a landlord-tenant matter in your expert opinion?
>
> A. Unless it becomes – unless he's in there and he's a squatter, trespassing.
>
> Q. Okay.
>
> A. Okay. If that's the case, then you have a crime.
>
> *See* R. Paul McCauley's deposition at 98:11-19, hereto attached as Exhibit 2.

7

That is the case here. In this case, Co-Defendant Bronson told the Defendants that Plaintiff had broken into the property without her permission. She did not tell these Defendants that she had received rent for the subject property. *See* Bronson dep. at 151:1-12. Plaintiff would have this Court rule that the Defendants should merely have walked away. While Plaintiff has designated an expert in this case, there is no evidence in this record to show that these Defendants' conduct violated any standards or was otherwise against the unlawful entry statute. See Opp., generally. Expert testimony is required in this case to assist the trier-of-fact in determining whether the Defendants' conduct was in contravention of the unlawful entry statute. *See Peters*, *White,* and *Etheridge, supra.* Plaintiff's failure to produce expert testimony in opposition to these Defendants' motion to show that the Defendants' conduct was not in compliance with the unlawful entry statute, defeats his claim. See Opp., generally. Therefore, judgment should be awarded to these Defendants.

### D. Plaintiff Has Not Shown That He Suffered a Severe Injury.

Plaintiff failed to rebut the District defendant's claim that Plaintiff did not suffer severe emotional distress, ostensibly conceding that issue. *See* Plaintiff's Opposition, generally. In the absence of severe emotional distress, plaintiff cannot sustain his claim for intentional infliction of emotional distress. *See Bernstein v. Fernandez*, 649 A.2d 1064 (D.C. 1991). Therefore, his intentional infliction of emotional distress claim against these Defendants, fails as a matter of law.

    PETER J. NICKLES
    Interim Attorney General for the District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General, Civil Litigation Division

    /s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV


    /s/ Leticia L. Valdes
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 442-9845; (202) 730-1881
Leticia.Valdes@dc.gov

# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT FOR

DISTRICT OF COLUMBIA

ANTHONY BRIDGEFORTH,              *

    Plaintiff,                   *

                                  *

    vs.                           * Case No.:

                                  * 06-2128 (RLC)

KHADIJAH BRONSON, et al.,         *

    Defendants.                   *

* * * * * * * * * * * * * * * * * * * * *

The deposition of OFFICER DARRELLE JOHNSON was taken on Wednesday, November 28, 2007, commencing at 9:40 a.m. at 555 Thirteenth Street, N.W., Washington, D.C., 20004, before Nancy P. Richmond, Registered Professional Reporter, Notary Public for the District of Columbia, when were present on behalf of the respective parties:

Al Betz & Associates, Inc.
www.albetzreporting.com

COPY

1          MS. VALDES:  Objection as to form.

2      Objection, calls for speculation.  Answer.

3      A.    Yes, because, like I say, when I was

4  there, he had a document stating that

5  Mr. Bridgeforth is not supposed to be in that

6  apartment.

7          So, therefore, yes, I didn't see any

8  documents from Mr. Bridgeforth stating that he's

9  supposed to be in that apartment.  So, yes.

10     Q.    Had you known that rent had already been

11 paid for that month, would that have influenced

12 your opinion or decision?

13         MS. VALDES:  Objection, calls for

14     speculation.

15     A.    Yes.  That would have influenced my --

16 my -- what I would have done, yes.

17     Q.    And what would you have done had you

18 known that rent had been paid?

19         MS. VALDES:  Objection, calls for

20     speculation.  You can -- off the record for a

21     minute.

1          (Thereupon, a discussion off the record

2    took place.)

3          A.   Okay.  If I would have known that rent

4    had been paid up for that month, I would -- I

5    would have told that it was a -- it was still a

6    landlord/tenant issue, that he had the right to

7    stay there to at least the end of that month,

8    since he had a document stating that he had his

9    rent paid up to the end of that month.

10         Q.   Okay.  And in that event, this would

11   have been, as we discussed earlier, something that

12   the police department should not have gotten

13   involved with because it appeared to be a

14   landlord/tenant dispute?

15              MS. VALDES:  Objection, calls for

16         speculation, but go ahead.

17         A.   If that would have presented to be when

18   I was on the scene.

19         Q.   Okay.

20              (Whereupon, Johnson Exhibit Number 2 was

21   marked.)

# Exhibit 2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

* * * * * *

DEPOSITION

* * * * * *

In the Matter of:

ANTHONY BRIDGEFORTH,

    Plaintiff

v.

KHADIJAH BRONSON, et al,

    Defendants

Civil No.
06-CA-002128
(RCL)

Friday,
February 15, 2008

Deposition of:

    R. PAUL McCAULEY, PhD

called for examination by Counsel for the Defendants, pursuant to notice of deposition, at 1:00 p.m., in the Office of the Attorney General for the District of Columbia, Room 6N106, 441 4th Street, N.W., Washington, D.C. 20001, when were present on behalf of the respective parties:

1    Mr. Bridgeforth?

2            MR. MONTHY:  Objection to form.

3            THE WITNESS:  Correct.

4            BY MS. VALDEZ:

5        Q    Okay.  Knowing that information,
6   does that change your opinion in this matter?
7        A    It's still landlord-tenant, and if
8   there's no physical harm or damage, anything,
9   get a, you know, get a piece of paper and get
10  him out.
11       Q    So if the landlord says, I didn't
12  give him the key, I didn't sign a lease, he
13  didn't sign a lease with me, it's still a
14  landlord-tenant matter in your expert opinion?
15       A    Unless it becomes -- unless he's
16  in there and he's a squatter, trespassing.
17       Q    Okay.
18       A    Okay.  If that's the case, then
19  you have a crime.
20       Q    And when does this, when does the
21  -- tell me when the line gets crossed to the
22  squatter trespassing.